

David G. Barger
Tel 703.749.1307
Fax 703.714.8307
bargerd@gtlaw.com

August 5, 2020

The Honorable Victor Marrero
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**VIA ECF**

      **Re:  Oussama El Omari v. James E.D. Buchanan, et al. Case No. 1:20-cv-02601 (VM): Request for Pre-Motion Conference**

Dear Judge Marrero:

      On behalf of Defendants Karv Communications, Inc. (KARV), Andrew Frank and Amir Handjani (collectively, the KARV Defendants), we write pursuant to Your Honor's Individual Practice Rule II.B.2, to request a pre-motion conference with respect to the KARV Defendants' proposed Motion to Dismiss the Amended Complaint.

      Consistent with Rule II.B.1, the KARV Defendants and Plaintiff El Omari exchanged letters setting forth their positions, which are attached as Exhibits A (KARV) and B (Plaintiff), and the KARV Defendants reaffirm and incorporate by reference their July 13, 2020 letter to Plaintiff (Exhibit A). The KARV Defendants' proposed motion to dismiss remains appropriate because Plaintiff has refused to dismiss the claims against the KARV Defendants (Counts 1, 3 and 4). The KARV Defendants have advised Plaintiff that his Amended Complaint's (AC) claims are fatally defective for failure to state a claim and under the doctrine of sovereign immunity. Plaintiff in his response failed to address the clear factual pleading and legal deficiencies and instead attached irrelevant pleadings from other matters, presumably in an effort to taint the KARV Defendants and distract the Court.

      For example, Plaintiff pulled out snippets from a suit in the United Kingdom against Farhad Azima, his apparent friend and colleague, and attached various excerpts from the recently decided case, along with a fabricated "hierarchy." However, the High Court of Justice decided the case against Azima and in favor of the Ras Al Khaimah Investment Authority (RAKIA) rendering on July 31, 2020, a more than 8 million-dollar award against Azima. Azima's <u>failed</u> allegations in <u>that case</u> do not constitute factual allegations in <u>this case</u>. Plaintiff's efforts here seem to be an effort to relitigate Azima's failed suit, which has no bearing on Plaintiff's suit.  This Court should give them no weight.

      In addition, Plaintiff attached a civil forfeiture complaint seeking to forfeit money, including money paid to RAKIA in connection with RAKIA's attempted sale of a hotel in the Republic of Georgia. *See* Plaintiff's Exhibit 3 to his July 17 letter. But that complaint, like Plaintiff's other exhibits, has nothing to do with this case. Indeed, the civil forfeiture complaint

The Honorable Victor Marrero
August 5, 2020
Page -2-

does not allege wrongdoing or improper intent by RAKIA nor does it mention any of the defendants in this case.[1]

These two cases are irrelevant sideshows and do nothing to address or respond to the deficiencies identified in the KARV Defendant's July 13, 2020 letter.

**RICO (Count 1)** – Plaintiff's Civil RICO claim against Frank and Handjani fails to satisfy several of RICO's pleading requirements. Plaintiff's letter in response ignores the clear deficiencies or talks right past them.

*Mail fraud predicate* - Among other failings identified in the KARV Defendant's July 13 letter that will be addressed in a motion to dismiss, Plaintiff totally fails to explain how a FARA report defrauds El Omari out of money or property. Under *Cleveland v. U.S.*, 531 U.S. 12, 21-22 (2000), regulatory filings (like the FARA statements here) do not seek to obtain "property" and so cannot ground a predicate act of mail fraud. It is this type of tactical abuse of RICO that this Court lamented in *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) (Marrero, J.).

*Wire fraud predicate* – Plaintiff claims that an unknown person posed as a Fox News reporter and induced Plaintiff through calls and emails to provide her with certain unspecified information that was allegedly worth substantial sums to the KARV Defendants. AC ¶¶ 137-151, 124. He claims that this person was an agent of and conspired with KARV Defendants. But the claim is devoid of **any** factual allegations that would connect this fake reporter to any of the KARV Defendants, explain how this information was valuable to the KARV Defendants, or identify any economic harm to Plaintiff. Plaintiff's letter ignores these deficiencies, instead engaging in sort of a circular, conclusory assertion, without any factual basis, that the reporter's actions are similar to El Omari's alleged experience with RAK. *See* Plaintiff's letter at 2, line 4.

*Witness retaliation predicate* – Plaintiff alleges that he was approached in 2011 by a CIA officer to whom Plaintiff provided sensitive documents. AC ¶ 37. Plaintiff alleges that the "propaganda racket" and the lack of disclosure to FARA was in retaliation for this conduct. *Id.* 125-26, in violation of 18 U.S.C. § 1513(e), (f). However, Plaintiff does not include any allegation that the KARV Defendants had any knowledge of Plaintiff's alleged conduct. And the vague allegations about what constituted the "propaganda racket" do not permit an inference of retaliation. *See, e.g.*, *Turner v. New Jersey State Police*, 2017 WL 1190917, at *32 (D.N.J. 2017).

Separately, Plaintiff's response letter confirms that the AC fails to adequately plead RICO continuity, injury, and proximate cause. Plaintiff's response to these deficiencies is to not point to any facts in the AC but to claim the KARV Defendants have "omniscient … knowledge … about their targets." Plaintiff's response letter at 2, lines 18-19.

**Defamation Per Se (Count 3)** – Plaintiff alleges that the KARV Defendants and the other defendants defamed him per se in an article published by Intelligence Online (IO). AC ¶¶ 24, 133. Plaintiff, however, alleges only bald conclusions and does not allege **any** facts to connect the

---

[1] To the contrary, the Department of Justice expressed its "appreciat[ion]" to "the government of Ras al Khaimah" for its "significant assistance" in its investigation in its press release regarding the matter. *See* Exhibit C, Department of Justice Office of Public Affairs Release dated June 3, 2020. https://www.justice.gov/opa/pr/justice-department-seeks-forfeiture-more-20-million-assets-relating-unlawful-use-us-financial.

The Honorable Victor Marrero
August 5, 2020
Page -3-

KARV Defendants to the IO article. *See id.* ¶¶ 24, 64. Plaintiff's response to the lack of alleged facts to support a connection between the KARV Defendants and the alleged defamation is to point to no facts in the AC that solve this deficiency. Instead, he (incorrectly) claims that his case is similar to the (failed) allegations made by Farhad Azima. Plaintiff's response letter, page 3, lines 1-3. These and other deficiencies identified in the KARV Defendants' July 13 letter require dismissal of this claim.

**CFAA (Count 4)** - Plaintiff alleges that all defendants (except IO) violated the Computer Fraud and Abuse Act **(**CFAA) through the fake reporter scheme described earlier. AC ¶¶ 139-151. As explained in the KARV Defendants' July 13 letter, this claim fails to meet three critical elements of the CFAA.

First, communicating with El Omari does not constitute unauthorized access to his computer. *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015). Second, the statute requires at least $5,000 in harm to the Plaintiff. Here, the fake reporter obtained no money, nor is she alleged to have caused any damage to his computer. 18 U.S.C. § 1030(e)(11). Plaintiff alleges that the reporter obtained information that was worth more than $5,000 to the defendants in this case, with no explanation of how he justifies such a claim. AC ¶¶ 147-49. Third, Plaintiff also makes a conclusory allegation that the fake Fox reporter was the agent of all of the CFAA defendants and conspired with and acted at their direction. *Id.* ¶¶ 150-151. He provides **no** facts for this claim of conspiracy. Plaintiff's response to these deficiencies is to simply claim that the reporter's misrepresentations constituted hacking and that the expenditure of legal fees is sufficient harm, incorrectly suggesting these were fees to investigate a security breach or hacking. *See* Plaintiff's response at page 3, lines 20-27.

**Sovereign Immunity** – The KARV Defendants also raised the defense of sovereign immunity. *See* Exhibit A, letter to Moore at 3. The AC alleges that the KARV Defendants were acting as agents of RAK (*i.e.*, at the direction of RAK and its Ruler), *see, e.g.*, AC ¶¶ 1, 68, 113, 64-65, 62, 19, so all of the claims must be barred by common law sovereign immunity. *See Omari v. RAKFTZA*, 2017 WL 3896399, at *10 (S.D.N.Y. 2017) *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014). Plaintiff now suggests only "private illegal actions" by the KARV Defendants as an exception to the doctrine, *see* Plaintiff's response letter at page 1, lines 16-20, but the AC makes no factual allegations to support that assertion.

Counts 1, 3 and 4 should be dismissed with prejudice against the KARV Defendants for the reasons stated above. We respectfully request a pre-motion conference to discuss the KARV Defendants' proposed motion to dismiss the AC, and are available at the Court's convenience.

Sincerely,
/S/ David G. Barger
David G. Barger
Daniel Filor

Enclosures
cc: counsel of record