# EXHIBIT A



David G. Barger
Tel 703.749.1307
Fax 703.714.8307
bargerd@gtlaw.com

July 13, 2020

Scott Michael Moore, Esq.
45 Rockefeller Plaza, 20th Floor
New York, New York 10111         **VIA Email (SMM@MILOPC.com)**

Re: Oussama El Omari v. James E.D. Buchanan, et al. Case No. 1:20-cv-02601 (VM)

Dear Mr. Moore:

On behalf of Defendants Karv Communications, Inc. (KARV), Andrew Frank and Amir Handjani (the "KARV Defendants") we write pursuant to Judge Marrero's Individual Practice Rule II B.1 to advise that we intend to move to dismiss the Amended Complaint (Dkt. 31) for failure to state a claim and under the doctrine of sovereign immunity.[1]

**RICO (Count 1)** – The complaint fails to state a claim on the merits. Plaintiff's Civil RICO claim against Frank[2] and Handjani fails to satisfy a number of RICO's pleading requirements. It is the type of tactical abuse of RICO that this Court lamented in *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) (Marrero, J.).

*Mail fraud predicate* – Plaintiff appears to allege that Frank and Handjani defrauded him by mailing deficient Foreign Agent Registration Act (FARA) notices to the Department of Justice to promote the interests of RAK by concealing an alleged "propaganda racket.". Under *Cleveland v. U.S.*, 531 U.S. 12, 21-22 (2000), however, regulatory filings (like the FARA statements here) do not seek to obtain "property" and so cannot ground a fraud claim. *See also, e.g., U.S. v. Schwartz*, 924 F.2d 410, 417 (2d Cir. 1991) (no fraud because arms-shipping licenses are not property); *U.S. v. Evans*, 844 F.2d 36 (2d Cir. 1988) (same for U.S. interest in regulating foreign resales of arms). There is no allegation that Defendants sought to obtain money or property **from Plaintiff**: a scheme to harm an individual's reputation—here, the purported "propaganda racket"— is not a scheme to obtain money or property. *See Lee*, 2005 WL 89396, at *4 (S.D.N.Y. 2005). Plaintiff's alleged "propaganda racket," (in reality, alleged defamation), while a clever turn of the phrase, is not racketeering and is not a predicate under 18 U.S.C. § 1961. Allegations of fraud must also be pled with particularity, and here the complaint merely offers a vague and conclusory allegation that Frank and Handjani "targeted investigations and false smear campaigns" against Plaintiff, Am. Compl. ¶ 64, without **any** alleged facts showing a fraud scheme against him.

*Wire fraud predicate* – Plaintiff claims that an unknown person posed as a FOX News reporter and induced Plaintiff through calls and emails to provide her with certain unspecified information that was allegedly worth to the Defendants substantial sums. ¶¶ 137-151, 124. He claims that this person was an agent of and conspired with Defendants. But far from supplying

---

[1] Because of page limits, to the extent permitted, we adopt the applicable arguments in Dechert's letter to you.
[2] Plaintiff alleges Frank's "true name" is Andrew Solomon. ¶ 7, Frank's birth name is Andrew David Frank. His wife's surname is Solomon. He has never held himself out as Andrew Solomon.

GREENBERG TRAURIG, LLP ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM
1750 Tysons Boulevard, Suite 1000 ■ McLean, Virginia 22102 ■ Tel 703.749.1300 ■ Fax 703.749.1301
*ACTIVE 50971860v1*

Scott Michael Moore
July 13, 2020
Page -2-

the particularity required by Rule 9(b), the claim is devoid of **any** factual allegations that would connect this fake reporter to any Defendant, nor how this information was valuable or how much it was worth. It is not reasonable to claim he voluntarily provided information to a reporter, which he knew could be made public, but contend that disclosing such information caused him (unspecified) damages.

*Witness retaliation predicate* – Plaintiff alleges that he was approached in 2011 by a CIA officer to whom Plaintiff provided sensitive documents. (¶ 37). Plaintiff alleges that the "propaganda racket" and the lack of disclosure to FARA was in retaliation for this conduct. (¶¶ 125-6), in violation of 18 U.S.C. § 1513. However, Plaintiff does not include any allegation that KARV, Frank or Handjani had any knowledge of Plaintiff's alleged conduct. And the vague allegations about what constituted the "propaganda racket" do not permit the inference of retaliation. *See, e.g.*, *Turner v. New Jersey State Police*, 2017 WL 1190917, at *32 (D.N.J. 2017).

*Continuity* – The complaint also inadequately alleges RICO's "continuity" element, whether "open-ended" or "closed-ended." There are no facts suggesting that the purported predicate acts are KARV's regular way of doing business, or a threat of continuing criminal activity, as is required for open-ended continuity. *Breslin Realty Dev. Corp. v. Schackner*, 397 F. Supp. 2d 390, 401 (E.D.N.Y. 2005). Nor is closed-ended continuity pled, because El Omari just alleges predicate acts involving "a limited number of participants" and victims all "with a narrow purpose." *See Gross*, 628 F. Supp. 2d at 493-94.

*Injury and Proximate Cause* – Finally, RICO injury and proximate cause are inadequately pleaded. Plaintiff's alleged RICO injury— "interference with [his] livelihood," ¶ 125—does not satisfy RICO's clear and definite injury standard. *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 2003). He also fails to plead RICO proximate cause, because he does not allege a "direct relation between the injury asserted and the injurious conduct alleged." *Empire Merchants*, 902 F.3d at 141. Moreover, his admitted termination from RAKFTZA in 2012, ¶ 38, is a "substantial intervening factor[]." *Doe v. Trump*, 385 265, 276-77 (S.D.N.Y. 2019).

**Defamation Per Se (Count 3)** – Plaintiff alleges that KARV, Frank, Handjani and the other Defendants defamed him per se "between themselves and to Defendant Intelligence Online through an article that Defendant Intelligence Online" (IO) published about, in small part, El Omari. ¶¶ 24, 133. Plaintiff, however, alleges only bald conclusions and does not allege **any** facts to connect the KARV Defendants to the IO article. See, ¶¶ 24, 64. Further, what IO published did not constitute defamation per se, or even ordinary defamation, since the reporting was couched as allegations, belief or opinion. *See* ¶ 19(a) ("reportedly embezzled"), 19 (b) & Ex. 1 ("The investment authority believes … misappropriated…" (emphasis added); 24, 64. Moreover, Plaintiff is a former public official who must allege facts showing a Defendant's reckless disregard for the truth. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). The remaining statements—suggesting the Plaintiff worked for RAKIA and is associated with Khater Massad, ¶ 19(c)-(d)—also do not constitute defamation per se because they are not inherently harmful statements that might allow the court to presume damages at the pleading stage even if they were false. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992).

**CFAA (Count 4)** - Plaintiff alleges that all Defendants violated the Computer Fraud and Abuse Act (CFAA) through the fake reporter scheme described earlier. ¶¶ 139-151. Even assuming the truth of those allegations, this claim fails to meet three critical elements of the CFFA.

Scott Michael Moore
July 13, 2020
Page -3-

First, communicating with El Omari is not unauthorized access to his computer, as even a cursory amount of research would have shown. *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015); 18 U.S.C. § 1030(a)(4); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 642 (S.D.N.Y. 2011) (a sender of emails does not "access" the recipients' computers within the meaning of the CFAA); *U.S. v. Aleynikoc*, 737 F. Supp. 2d 173, (S.D.N.Y. 2010) (CFAA.

Second, the statute requires at least $5,000 in harm to the Plaintiff. Here, the fake reporter obtained no money, nor did she apparently cause any damage to his computer, two traditional examples of what could constitute damages. 18 U.S.C. § 1030(e)(11). Plaintiff alleges that the reporter obtained information that was worth more than $5,000 to the Defendants in this case, with no explanation of how he justifies such a claim. ¶¶ 147-149.

Third, Plaintiff also makes a conclusory allegation that the fake FOX reporter was the agent of all of the Defendants and conspired with and acted at their direction. ¶¶ 150-151. He provides **no** facts for this claim of conspiracy, which is insufficient. *See Garland-Sash v. Lewis*, 2007 WL 935013, at *4 (S.D.N.Y. 2007).

**Sovereign Immunity** – As you are aware, Plaintiff once ran the Free Trade Zone Authority of the Emirate of Ras Al Khaimah ("RAKFTZA"), but was terminated and later convicted in abstentia in RAK of various crimes and is a fugitive. He sued RAKFTZA and RAK's Ruler, His Highness Sheikh Saud bin Saqr al Qasimi, in this Court. *See El Omari v. RAKFTZA ("OEO I")*, 2017 WL 3896399, at *1-5 (S.D.N.Y. 2017). Plaintiff alleged in that case, as in this one, the creation of a "false smear report" against Plaintiff. *Id.* Judge Buchwald dismissed, finding that Sheikh Saud was entitled to common law sovereign immunity (and that the complaint otherwise failed to state a claim). *Id.* at *6-11. The Second Circuit affirmed. *El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2018). The complaint here seeks to circumvent that sovereign immunity bar by inventing new claims and naming defendants other than Sheikh Saud himself. The same immunity, however, "extends beyond current and former government officials to individuals acting as an agent for the government." *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015) (citing *Heaney v. Gov't of Spain*, 445 F.2d 501, 504 (2d Cir. 1971)). Plaintiff alleges that the KARV defendants were agents of RAK, and he frames all of their conduct as done at the direction of RAK and the Ruler. *See, e.g.*, ¶¶ 1, 68, 113, 64-65, 62, 19. Even assuming the truth of what is alleged (which we vigorously dispute), all of the claims against my clients are barred by common law sovereign immunity. *See id.*; *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014); *OEO I*, 2017 WL 3896399, at *10. For these reasons, all the claims against the KARV Defendants fail.

Sincerely,

*/s/ David G. Barger*

David G. Barger
Chair, Tysons Litigation Group
Daniel Filor

cc:   Hon. Victor Marrero (via email), and counsel of record