**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

OUSSAMA EL OMARI

        Plaintiff,

    v.

JAMES E. D. BUCHANAN, DECHERT LLP,
ANDREW D. FRANK, a/k/a ANDREW D.
SOLOMON, NEIL GERRARD, AMIR ALI
HANDJANI, a/k/a AMIRALI HANDJANI,
KARV COMMUNICATIONS, INC.,
INTELLIGENCE ONLINE, and LONGVIEW
PARTNERS (GUERNSEY) LTD.

        Defendants.

20 Civ. 2601 (VM)

Oral Argument Requested

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

DECHERT LLP
Linda C. Goldstein
Benjamin Rosenberg
Brian C. Raphel
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com
benjamin.rosenberg@dechert.com
brian.raphel@dechert.com

*Attorneys for Defendants Dechert LLP and
Neil Gerrard*

GREENBERG TRAURIG LLP
David G. Barger
1750 Tysons Blvd, Ste. 1000
McLean, Virginia 22102
Tel. (703) 749-1300
bargerd@gtlaw.com

Daniel P. Filor
200 Park Avenue
New York, New York 10166
Tel. (212) 801-6758
filord@gtlaw.com

*Attorneys for Defendants Andrew D. Frank,
Amir Ali Handjani, and KARV Communications,
Inc.*

MURPHY & MCGONIGLE PC
Steven D. Feldman
1185 Avenue of the Americas, Fl. 21
New York, New York 10036
Tel. (212) 880-3988
sfeldman@mmlawus.com

*Attorney for Defendant James E.D. Buchanan*

WEIL, GOTSHAL & MANGES LLP
Patrick J. O'Toole, Jr.
100 Federal Street
34th Street
Boston, Massachusetts 02110
Tel. (617) 772-8365
patrick.otoole@weil.com

Jay R. Minga
767 Fifth Avenue
New York, New York 10153
Tel. (212) 310-8378
jay.minga@weil.com

*Attorneys for Defendant Longview Partners (Guernsey) Ltd.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

ALLEGATIONS OF THE AMENDED COMPLAINT............................................... 2

       A.     The Parties ...................................................................................... 2

       B.     Count I: RICO Claim Against the KARV Defendants ............................. 3

       C.     Count II: Prima Facie Tort Claim Against Buchanan And Longview ........................................................................................ 3

       D.     Count III: Defamation *Per Se* Claim Against All Defendants.................. 4

       E.     Count IV: CFAA Claim Against The Moving Defendants ....................... 4

ARGUMENT ................................................................................................................... 5

    I.     PLAINTIFF FAILS TO STATE A RICO CLAIM (COUNT I)........................... 5

       A.     Plaintiff Fails To State Any Predicate Acts ............................... 5

       B.     Plaintiff Fails To State Continuity ........................................... 8

       C.     Plaintiff Fails To State RICO Injury And Proximate Cause ..................... 9

    II.    PLAINTIFF FAILS TO STATE A PRIMA FACIE TORT CLAIM (COUNT II) ........................................................................................ 10

    III.   PLAINTIFF FAILS TO STATE A DEFAMATION CLAIM (COUNT III) ...... 11

       A.     The Claim Fails As To The Alleged Statements At The October 2018 Meeting ........................................................................ 12

       B.     The Claim Fails As To The April 8, 2019 Article ................................. 13

            1.     Plaintiff has not pled that the alleged defamatory statements were made by or attributed to Moving Defendants ..................... 13

            2.     Plaintiff has not sufficiently alleged falsity ................................ 13

            3.     Plaintiff has not alleged actual malice ......................................... 16

**TABLE OF CONTENTS**
(continued)

**Page**

IV.  PLAINTIFF FAILS TO STATE A CFAA CLAIM (COUNT IV)...................... 17

    A.  Plaintiff Has Not Pled That Alison "Accessed" His Computer .............. 17

    B.  Plaintiff Has Not Pled Financial Loss Of $5,000 .................................... 19

    C.  Plaintiff Has Not Pled That Alison Acted On Behalf Of Any Defendant................................................................................................ 19

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ........................................................................................................9

*Aronson v. Wiersma*,
  65 N.Y.2d 592 (1985) .....................................................................................................15

*Arroyo v. Oprona, Inc.*,
  No. H-16-852, 2017 WL 7792617 (S.D. Tex. Apr. 11, 2017) .........................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................13

*Bardes v. Mass. Mut. Life Ins. Co.*,
  932 F. Supp. 2d 636 (M.D.N.C. 2013) ..........................................................................10

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013) ............................................................................17

*Cabello-Rondón v. Dow Jones & Co.*,
  No. 16-civ-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017),
  *aff'd*, 720 F. App'x 87 (2d Cir. 2018) ...........................................................................16

*CBS Broad. Inc. v. Counterr Grp.*,
  No. 05-civ-7946 (DAB), 2008 WL 11350274 (S.D.N.Y. Aug. 26, 2008) ......................15

*Cleveland v. United States*,
  531 U.S. 12 (2000) ...........................................................................................................6

*Cruz v. Marchetto*,
  No. 11-civ-8378, 2012 WL 4513484 (S.D.N.Y. Oct. 1, 2012) ......................................13

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967) .......................................................................................................17

*Daniels v. Metro Mag. Holding Co., L.L.C.*,
  634 S.E.2d 586 (N.C. Ct. App. 2006) ............................................................................14

*Delacruz v. State Bar of Cal.*,
  No. 16-cv-06858 (BLF), 2018 WL 3077750 (N.D. Cal. Mar. 12, 2018),
  *aff'd*, 768 F. App'x 632 (9th Cir. 2019) .........................................................................18

*Dillon v. City of New York*,
   261 A.D.2d 34 (1st Dep't 1999) .......................................................................12, 15

*Donovan v. Fiumara*,
   442 S.E.2d 572 (N.C. Ct. App. 1994) ....................................................................12

*Egiazaryan v. Zalmayev*,
   No. 11-civ-2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ............................12, 16

*El Omari v. RAKFTZA*,
   No. 16 Civ. 3895, 2017 WL 3896399 (S.D.N.Y. Aug. 17, 2017),
   *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018) .................1, 2

*Ellis v. Warner*,
   No. 15-10134-Civ-Goodman, 2017 WL 634287 (S.D. Fla. Feb. 16, 2017) ............................7

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
   902 F.3d 132 (2d Cir. 2018) ...........................................................................6, 9

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2001) ......................................................................18

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...............................................................................8

*Freihofer v. Hearst Corp.*,
   65 N.Y.2d 135 (1985) ....................................................................................11

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ....................................................................................16

*Goldman v. Barrett*,
   No. 15-civ-9223 (PGG), 2016 WL 5942529 (S.D.N.Y. Aug. 24, 2016)................................10

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)......................................................................5

*Harisch v. Goldberg*,
   No. 14-cv-9503 (KBF), 2016 WL 1181711 (S.D.N.Y. Mar. 25, 2016) ................................11

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)................................................................................2

*Havell v. Islam*,
   292 A.D.2d 210 (1st Dep't 2002) ........................................................................10

*Heins v. Bd. of Trs. of Inc. Vill. of Greenport*,
   237 A.D.2d 570 (N.Y. App. Div. 1997) ..................................................................15

*Hitchcock v. Woodside Literary Agency*,
   15 F. Supp. 2d 246 (E.D.N.Y. 1998) ...........................................................10

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
   665 F. Supp. 2d 239 (S.D.N.Y. 2009) ...........................................................7

*Izydore v. Tokuta*,
   775 S.E.2d 341 (N.C. Ct. App. 2015) ...........................................................13

*Kahn v. New York Times Co.*,
   269 A.D.2d 74 (1st Dep't 2000) ...........................................................13

*Karam v. First Am. Bank of N.Y.*,
   190 A.D.2d 1017 (4th Dep't 1993) ...........................................................12

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) ...........................................................9

*Kimm v. Lee*,
   No. 04-Civ-5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) ......................................5, 6

*LaComb v. Jacksonville Daily News Co*.,
   543 S.E 2d 219 (N.C. Ct. App. 2001) ...........................................................15

*Lebetkin v. Giray*,
   No. 18-cv-8170 (DLC), 2018 WL 6591252 (S.D.N.Y. Dec. 14, 2018) .................................11

*Lee v. Bankers Tr. Co.*,
   166 F.3d 540 (2d Cir. 1999) ...........................................................11

*Lerman v. Flynt Distributing Co.*,
   745 F.2d 123 (2d Cir. 1984) ...........................................................16

*LightSquared Inc. v. Deere & Co.*,
   No. 13-civ-5543 (RMB),2015 WL 585655 (S.D.N.Y. Feb 5, 2015),
   *aff'd sub nom. Harbinger Capital Partners LLC v. Deere & Co.*,
   632 F. App'x 653 (2d Cir. 2015) ...........................................................20

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) ...........................................................17

*Lopez v. Univision Commc'ns, Inc.*,
   45 F. Supp. 2d 348 (S.D.N.Y. 1999) ...........................................................16

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
   No. 14-1299, 2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) ...........................................9

*Mackin v. Auberger*,
    59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) .............................................................9

*Mann v. Abel*,
    10 N.Y.3d 271 (2008) ...........................................................................................14

*Masson v. New York Magazine, Inc.*,
    501 U.S. 496 (1991) ..............................................................................................15

*Med. Care of W. N.Y. v. Allstate Ins. Co.*,
    175 A.D.3d 878 (4th Dep't 2019) .........................................................................11

*McKenzie v. Dow Jones & Co., Inc.*,
    355 F. App'x 533 (2d Cir. 2009) ..........................................................................10

*Moriah v. Bank of China Ltd.*,
    107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015).............................................................2

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003).....................................................................................9

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..............................................................................................17

*Nucor Corp. v. Prudential Equity Grp., LLC*,
    659 S.E.2d 483 (N.C. Ct. App. 2008) ...................................................................15

*Oracle Am., Inc. v. Serv. Key, LLC*,
    No. 12-civ-00790 (SBA), 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ................17

*Pulte Homes, Inc. v. Laborer's Int'l Union of N. Am.*,
    No. 09-13638, 2010 WL 1923814 (E.D. Mich. May 12, 2010),
    *aff'd in part, rev'd in part on other grounds,* 648 F.3d 295 (6th Cir. 2011) ..........18

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp. 3d 45, 73-74 (E.D.N.Y. 2020) ...........................................................5

*Renwick v. News & Observer Publ'g Co.*,
    312 S.E.2d 405 (N.C. 1984)...................................................................................12

*Rishikof v. Mortada*,
    70 F. Supp. 3d 8, 13 (D.D.C. 2014) .........................................................................2

*Sabilia v. Richmond*,
    No. 11-civ-739 (MHD), 2011 WL 7091353 (S.D.N.Y. Oct. 26, 2011)....................20

*Samson v. North Carolina*,
    No. 5:19-cv-443 (BO), 2020 WL 6935469 (E.D.N.C. Nov. 24, 2020) ...................12

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997) ...................................................................8

*Schultz v. Boy Scouts of Am., Inc.*,
65 N.Y.2d 189 (1985) .........................................................................10

*Schwartz v. Dep't of Defense*,
No. 15-cv-7077 (RLM), 2017 WL 78482 (E.D.N.Y. Jan. 6, 2017) ....7

*Skinner v. Reynolds*,
764 S.E.2d 652 (N.C. Ct. App. 2014) .................................................15

*Spool v. World Child Int'l Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) .................................................................8

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ...............................................................15

*Stanton v. Carrara*,
28 A.D.3d 642 (2d Dep't 2006) ..........................................................11

*Taube v. Hooper*,
840 S.E.2d 313 (N.C. Ct. App. 2020) ...........................................12, 15

*United Magazine Co. v. Murdoch Magazines Dist., Inc.*,
146 F. Supp. 2d 385 (S.D.N.Y. 2001) ................................................10

*United States v. Aleynikov*,
737 F. Supp. 2d 173 (S.D.N.Y. 2010) .............................................17, 19

*United States v. DiTomasso*,
932 F.3d 58 (2d Cir. 2019) .................................................................18

*United States v. Evans*,
844 F.2d 36 (2d Cir. 1988) ...................................................................6

*United States v. Schwartz*,
924 F.2d 410 (2d Cir. 1991) .................................................................6

*Weissman v. CIA*,
565 F.2d 692 (D.C. Cir. 1977) ..............................................................7

**STATUTES/RULES**

18 U.S.C. § 1030(a)(4) .............................................................................18

18 U.S.C. § 1030(c)(4)(A)(i)(I) ...............................................................19

18 U.S.C. § 1030(c)(4)(A)(i)(II)-(V) .......................................................19

18 U.S.C. § 1030(e)(11) ..............................................................................................19

18 U.S.C. § 1030(g) ....................................................................................................19

18 U.S.C. § 1341 ...........................................................................................................3

18 U.S.C. § 1343 ...........................................................................................................3

18 U.S.C. § 1513 ........................................................................................................3, 7

18 U.S.C. § 1515(a)(4)(A) .............................................................................................7

18 U.S.C. § 1961 ...........................................................................................................6

18 U.S.C. § 1964(c) .......................................................................................................9

Fed. R. Civ. P. 9(b) .......................................................................................................6

N.C. GEN. STAT. ANN. § 1-54 ......................................................................................12

N.Y. C.P.L.R. § 215(3) ...............................................................................................12

**OTHER AUTHORITIES**

Orin S. Kerr, Cybercrimes' Scope: Interpreting "Access" and "Authorization" in Computer
Misuse Statutes, 78 N.Y.U. L. Rev. 1596 (2003) ....................................................19

## PRELIMINARY STATEMENT

Plaintiff Oussama El Omari was fired from his positions as Director and CEO of the Ras Al Khaimah Free Trade Zone Authority ("RAKFTZA") in 2012.  *See* Amended Complaint (or "FAC") (ECF No. 31) ¶ 4.  In 2016, he sued RAKFTZA and others on various grounds purportedly arising from his termination and from Ras Al Khaimah's ("RAK") issuance of an international request for his arrest after he was convicted of criminal charges.  Plaintiff's entire complaint was dismissed; his fraud claim was deemed "an absurdity" and the rest of the complaint did not "even come close to stating a claim."  *See El Omari v. RAKFTZA,* No. 16 Civ. 3895, 2017 WL 3896399, at *7, *11 (S.D.N.Y. Aug. 17, 2017), *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018).  Now, Plaintiff asserts equally spurious defamation claims against the Moving Defendants—four individuals, an international law firm, an asset management firm, and a public relations firm—based principally on alleged oral statements made outside of the statute of limitations, or written statements not attributed to any Moving Defendants.[1]

Stripped of digressions, the Amended Complaint's fatal weaknesses are clear.  Its Racketeer Influenced and Corrupt Organizations Act ("RICO") claim impermissibly tries to recast defamation allegations as RICO predicates, and does not state those predicates, continuity, injury, or proximate cause.  North Carolina law, which governs Plaintiff's common law claims, does not recognize claims for prima facie tort.  The defamation claims fail for many reasons: oral statements allegedly made in 2018 are time-barred; and the statements made in the 2019 article published by Intelligence Online are (i) not made by the Moving Defendants or attributed to them, (ii) not false or not defamatory *per se*, and (iii) not actionable by a public official or

---

[1]     The Amended Complaint also names as a Defendant Intelligence Online, whose default the clerk entered on August 27, 2020.  ECF No. 64.  Defendants other than Intelligence Online are called the "Moving Defendants."

figure such as Plaintiff unless made with actual malice, which he has not alleged.  The Computer

Fraud and Abuse Act ("CFAA") claim does not satisfy the statutory elements of "access" and

"loss" and is based on alleged conduct by an individual not named as a Defendant who is not

alleged to have any connection to any Moving Defendant.  Pursuant to the Court's Order, ECF

No. 80, the Moving Defendants move to dismiss the Amended Complaint on these grounds.[2]

## ALLEGATIONS OF THE AMENDED COMPLAINT

On this motion, the well-pled allegations of the Amended Complaint are assumed to be

correct, but the Court need not credit conclusory allegations.  *See Harris v. Mills*, 572 F.3d 66,

72 (2d Cir. 2009) ("'[T]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice[.]'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A.      The Parties

Although Plaintiff does not allege any interactions between himself and the Moving

Defendants, each of them is allegedly associated with RAK:

- Defendant KARV Communications, Inc., a public relations firm, and affiliated
  Defendants Andrew Frank and Amir Ali Handjani (the "KARV Defendants"),
  allegedly conducted a public relations campaign for RAK.  FAC ¶¶ 31, 63-66.

- Defendant James Buchanan allegedly worked for Ras Al Khaimah Development
  LLC and the Ras Al Khaimah Investment Authority ("RAKIA").  Buchanan is
  identified as a purported "agent" of Defendant Longview.  *Id.* ¶¶ 5, 17.

- Defendant Longview is an asset management firm that allegedly manages some
  RAK state assets.  *Id.* ¶¶ 12, 17.

---

[2]     In accordance with the Order, this brief addresses arguments common to the Moving Defendants and does not address the defenses of personal jurisdiction, subject matter jurisdiction, service of process, and sovereign immunity raised in their pre-motion letters.  Dismissal should not be denied on those grounds, however, without full briefing and the opportunity to submit affidavits supporting any of the Moving Defendants' factual challenges to jurisdiction or service.  Separately, while only some of the Moving Defendants asserted common-law foreign sovereign immunity in their pre-motion letters, the Amended Complaint alleges that *all* of the Moving Defendants "act[ed] as propaganda agents … who take their orders directly from" a foreign government official, which makes that defense equally applicable to all of them.  FAC ¶ 1; *see El Omari*, 2017 WL 3896399, at *10; *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014).

- Defendant Dechert LLP and its former partner, Defendant Neil Gerrard, allegedly investigated suspected wrongdoing by former RAK officials. *Id.* ¶¶ 27-28.

The four causes of action are based on the following allegations:

**B.    Count I: RICO Claim Against the KARV Defendants**

The RICO claim arises principally out of public filings the KARV Defendants made under the Foreign Agents Registration Act ("FARA") between 2013 and 2019. *Id.* ¶ 67. Plaintiff asserts that these filings constitute RICO mail and wire fraud predicates (18 U.S.C. §§ 1341, 1343) by purportedly misrepresenting the public relations work the KARV Defendants did for RAK (the so-called "propaganda racket"). *Id.* ¶¶ 66-118, 121, 125-126. Plaintiff further asserts that the KARV Defendants committed wire fraud by means of email and Skype communications to Plaintiff from someone purporting to be a Fox News reporter named "Samantha Alison." *Id.* ¶¶ 124, 139. Plaintiff also asserts that the KARV Defendants committed RICO informant retaliation predicates (18 U.S.C. § 1513) by perpetrating the "propaganda racket" in retaliation for Plaintiff's alleged provision of information to a CIA officer in 2011. *Id.* ¶¶ 37, 125-126.

**C.    Count II: Prima Facie Tort Claim Against Buchanan And Longview**

The prima facie tort claim arises out of an alleged meeting in London in or about October 2018 between Buchanan and Plaintiff's expert witness Radha Stirling at which Buchanan, "on behalf of" a foreign sovereign entity, allegedly threatened to report Plaintiff to the IRS and "bring him down," and called him a "human trafficker." *Id.* ¶¶ 16, 129. Plaintiff also alleges that Buchanan, acting on behalf of and taking orders directly from a foreign sovereign entity, *id.* ¶¶ 1, 17, 129-30, made unspecified statements about Plaintiff to the IRS, DHS, and "possibly" other agencies, *id.* ¶ 130, and that, as a result, Plaintiff had a voluntary interview at his North Carolina home with federal officials. *See id.* ¶ 26.

### D.    Count III: Defamation *Per Se* Claim Against All Defendants

Plaintiff's first defamation claim is based on the allegations just mentioned—that Buchanan allegedly told Stirling, in October 2018, that Plaintiff was a "human trafficker" and would report him to the IRS. *Id.* ¶¶ 16, 134.  His second defamation claim is based on two statements in an article published by Intelligence Online on April 8, 2019: (a) "[RAKIA] is on a vast worldwide hunt to recover arrears reportedly embezzled by its former senior officials, Khater Massaad and Oussama El Omari," *id.* ¶ 19(a) (emphasis omitted), and (b) "***The investment authority believes that*** Massaad and his former alley [sic] Oussama El Omari, who previously oversaw [RAKFTZA], misappropriated as much as $1.5 billion in overpayments." *Id.* ¶ 19(b) (emphases added and omitted); *id.* Ex. 1 at 1.  (The Amended Complaint omits the highlighted words.)  Plaintiff also asserts that certain phrases falsely link him to Massaad.  *Id.* ¶ 19(c)-(d).  The article neither quotes the Moving Defendants nor attributes any statements to them, but Plaintiff asserts without any factual support that they "conveyed and published the false facts about [him] between themselves and to Intelligence Online, and Intelligence Online did publish the false facts."  *Id.* ¶ 24.

### E.    Count IV: CFAA Claim Against The Moving Defendants

Plaintiff asserts that someone claiming to be a Fox News reporter named "Samantha Alison" contacted him by email on February 5, 2020 and allegedly sent him 12 more emails between February 6 and April 16, 2020.  *Id.* ¶ 139-141.  He alleges he and Alison spoke by Skype five times in March and April 2020 and that he shared information about this and other lawsuits.  *Id.* ¶¶ 143, 147.  Plaintiff asserts that he later learned that Alison was not a reporter and that he spoke to her under "false pretenses."  *Id.* ¶¶ 145-148.  He does not allege that she intruded into his computer or caused him any financial loss.  He alleges only that the information he shared would be "valuable to a party defending this action far in excess of $5,000."  *Id.* ¶ 148.

## ARGUMENT

## I.   PLAINTIFF FAILS TO STATE A RICO CLAIM (COUNT I)

This Court has cautioned plaintiffs about the tactical abuse of the RICO statute.  *Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) (Marrero, J.).  That caution has gone unheeded here.

The alleged RICO scheme consists of what Plaintiff describes as "continuing, malicious, and serious *defamatory* attacks" intended to "destroy" him.  FAC ¶ 1 (emphasis added).  That description dramatically exaggerates Plaintiff's actual allegations because he merely describes a single Intelligence Online article.  No matter, courts routinely reject attempts to shoehorn defamation into RICO claims.  *See, e.g.*, *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73-74 (E.D.N.Y. 2020).  In *Rajaratnam*, the court rejected RICO fraud allegations where the defendants allegedly benefitted financially from publishing false negative statements about the plaintiff.  *Id.*  Similarly, a court rejected a plaintiff's claims of fraud undertaken in furtherance of a putative RICO scheme to destroy the plaintiff's name and reputation because they were "thinly clothed defamation claims."  *Kimm v. Lee*, No. 04-Civ-5724 (HB), 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005).  Plaintiff's RICO claim alleges that the KARV Defendants committed fraud to further a "propaganda racket," FAC ¶ 118, 121, 125-126, and to "investigate, attack, smear, and damage" him, *id.* ¶ 120.  This attempt to shoehorn defamation into RICO should be rejected.

### A.   Plaintiff Fails To State Any Predicate Acts

To state a RICO claim, Plaintiff must plead at least two viable predicate acts that are part of a continuous pattern of racketeering activity that proximately caused him concrete financial injury. The predicates he asserts here are mail fraud, wire fraud, and informant retaliation. However, he fails to allege facts to show that the elements of any of these are satisfied.

Plaintiff asserts that Frank and Handjani engaged in predicate acts of mail and wire fraud by submitting to DOJ FARA notices which were allegedly false and misleading because they represented that KARV was acting to promote the interests of RAK, but concealed that they were running an alleged "propaganda racket." *E.g.*, FAC ¶¶ 67-68, 72-75, 77, 81.  Under *Cleveland v. United States*, however, regulatory filings, like these FARA statements, do not seek to obtain "property" and so cannot ground mail or wire fraud. 531 U.S. 12, 21-22 (2000).  *See also United States v. Schwartz*, 924 F.2d 410, 417 (2d Cir. 1991) (no fraud because arms-shipping licenses are not property); *United States v. Evans*, 844 F.2d 36, 42 (2d Cir. 1988) (similar).  Moreover, there is no allegation that the KARV Defendants sought to obtain money or property *from Plaintiff*.  A scheme to harm an individual's reputation—the goal of the purported "propaganda racket"—is not a scheme to obtain money or property.  *Kimm*, 2005 WL 89386, at *4.  Plaintiff's alleged "propaganda racket" is not racketeering under 18 U.S.C. § 1961.

In any event, Plaintiff has failed to plead fraud predicates with Rule 9(b) particularity.  *See* FED. R. CIV. P. 9(b).  He does not plead—let alone with particularity—what activities constitute the "propaganda racket"; specify the misrepresentations or omissions that purportedly rendered the FARA filings fraudulent; or identify any "money or property" that was "the object of the [purported] scheme [to defraud]."  *See Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

Plaintiff's other fraud theory is that Alison defrauded him over email and Skype.  *See* FAC ¶ 124.  But he offers no factual basis to tie the KARV Defendants to Alison, instead conclusorily asserting that Alison was their "agent" with whom they "conspire[d]."  *Id.* ¶¶ 150-51.  Such "vague allegations" that "the fraud was committed by" Defendants collectively "through" a third party

"are insufficient to satisfy the requirements of 9(b)."  *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 260 (S.D.N.Y. 2009).

As for informant retaliation under 18 U.S.C. § 1513, Plaintiff's theory is that the KARV Defendants retaliated against him because he provided information to a CIA agent.  But § 1513 makes it a crime to retaliate against someone who provides information "to a law enforcement officer," which the statute defines as someone who is "authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense."  18 U.S.C. § 1515(a)(4)(A).  By statute, CIA agents have no law enforcement powers.  *See Weissman v. CIA*, 565 F.2d 692, 695 (D.C. Cir. 1977) ("The [Act], which created the CIA … specifically provided that the 'Agency shall have no police, subpoena, law-enforcement powers, or internal-security functions.'"); *see also Schwartz v. Dep't of Defense*, No. 15-cv-7077 (RLM), 2017 WL 78482, at *24 (E.D.N.Y. Jan. 6, 2017) (recognizing CIA has no authority in law enforcement proceedings).  Furthermore, Plaintiff does not even allege the KARV Defendants knew that Plaintiff provided information to a CIA agent, much less when they learned of that alleged fact.  *See* FAC ¶ 37, 125-26.  The failure to allege when a defendant "became aware" of Plaintiff's law enforcement contacts is fatal.  *Arroyo v. Oprona, Inc.*, No. H-16-852, 2017 WL 7792617, at *6 (S.D. Tex. Apr. 11, 2017); *accord Ellis v. Warner*, No. 15-10134-Civ-Goodman, 2017 WL 634287, at *11 (S.D. Fla. Feb. 16, 2017).

Beyond those infirmities, Plaintiff fails to plead any facts about what constituted the alleged retaliatory "propaganda racket" and "false smear campaigns."  *See, e.g.*, *id.* ¶¶ 70, 72-75, 77, 79, 81-83, 85-96, 98-99, 105, 108, 113, 116, 125-26.  His "vague and detail-free" statements regarding unspecified alleged retaliation do not add up to a criminal violation of § 1513.  *See Ellis*, 2017 WL 634287, at *11.

**B.      Plaintiff Fails To State Continuity**

The RICO claim also fails because it does not allege either "closed-ended" or "open-ended" continuity.  To state a "closed-ended" racketeering pattern, a complaint must allege "a series of related predicates extending over a substantial period of time," *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008), involving a "number of both participants and victims," a "number and variety of predicate acts," and "the presence of separate schemes," *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).  But Plaintiff identifies only two alleged participants (the individual KARV Defendants) and a single victim (himself); he asserts only one concrete act with any conceivable effect on him (the Intelligence Online article); and he fails to allege any factual link between the KARV Defendants and that one act.  FAC ¶¶ 19, 117-26.  Multiple FARA filings that purportedly furthered a "propaganda racket," *see id.* ¶¶ 67-116, do not form a pattern because they are part of a singular act, and a plaintiff may "not artificially fragment[] a singular act into multiple acts simply to invoke RICO."  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

As for an "open-ended" pattern, a plaintiff must show "a threat of continuing criminal activity beyond the period during which the predicate acts were performed."  *Spool*, 520 F.3d at 185.  Plaintiff concedes that KARV, the alleged RICO enterprise, conducts "legitimate public relations activities," FAC ¶¶ 119-20, so he must allege facts suggesting that "the predicate acts were the regular way of operating [KARV], or that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Spool*, 520 F.3d at 185 (citation omitted).  But he does not allege that KARV regularly conducts its business through fraud or retaliation.  And the single alleged article published by Intelligence Online more than a year before the Amended Complaint was filed, *see* FAC ¶ 19, cannot "impl[y] a threat of continued criminal activity."  *Spool*, 520 F.3d at 185 (citation omitted).

- 8 -

### C.       Plaintiff Fails To State RICO Injury And Proximate Cause

Plaintiff has also failed to state a RICO injury.  The only RICO injury allegations are that the KARV Defendants' actions were "harmful to Plaintiff" and "interfere[d] with [his] livelihood."  FAC ¶¶ 125-26.  These are not the clear and definite injuries to the Plaintiff's "business or property" that RICO requires.  *See* 18 U.S.C. § 1964(c); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).  Emotional and reputational harm and loss of future career or income opportunities—all that Plaintiff alleges—are not RICO injuries.  *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014); *Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014); *Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. 14-1299, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014).

RICO also requires a "direct relation" between any wrongdoing and purported injury.  *Empire Merchants*, 902 F.3d at 141.  The crux of the alleged RICO scheme here is the FARA filings, *see* FAC ¶ 67-116, but they do not satisfy the proximate cause requirement under *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454, 457-61 (2006).  In *Anza*, a RICO plaintiff asserted that the defendant filed "fraudulent tax returns" with a government agency and thereby committed fraud, which, in turn, enabled the defendant to lower its prices, harming the plaintiff.  *Id.* at 454, 457–58.  The Court held that the alleged injury was directly caused not by the false filings, but by the act of offering lower prices, so the plaintiff's theory did "not satisfy the requirement of proximate causation."  *Id.* at 458-61.  Here, Plaintiff claims no direct effect on him from any FARA filings—only from some unspecified act of "propaganda."  The Alison and CIA officer allegations also fail the proximate cause requirement because there is nothing connecting the KARV Defendants to Alison, nor any factual link showing that the KARV Defendants were aware of Plaintiff's alleged CIA communications or would have, or did, retaliate against him.

## II.      PLAINTIFF FAILS TO STATE A PRIMA FACIE TORT CLAIM (COUNT II)

Plaintiff claims that Buchanan and Longview committed prima facie tort when, in an October 2018 conversation with Stirling, Buchanan allegedly called Plaintiff a "human trafficker" and said he would "report him to the IRS." These same allegations are also the basis for his slander claim. *Compare* FAC ¶ 129, *with id.* ¶ 134. The claim fails on several grounds.

*First*, Plaintiff cannot escape the one-year limitations bar on his defective slander claim (*see infra* Part III.A) by repackaging it as a prima facie tort. *See McKenzie v. Dow Jones & Co., Inc.*, 355 F. App'x 533, 535-36 (2d Cir. 2009); *Havell v. Islam*, 292 A.D.2d 210, 210 (1st Dep't 2002) ("A claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitation period … plaintiff cannot avoid … by labeling the action as one to recover damages for a prima facie tort." (internal citations omitted)).

*Second,* under New York choice-of-law rules, prima facie tort claims are subject to "the law of the place where the tort occurred, which is the place where [his] injuries occurred." *Hitchcock v. Woodside Literary Agency*, 15 F. Supp. 2d 246, 251 (E.D.N.Y. 1998); *accord Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 195 (1985). Here, that state is North Carolina, where Plaintiff resides and where he alleges that federal agents visited his home after the October 2018 statements. FAC ¶¶ 4, 16, 26, 129. However, North Carolina law does not recognize prima facie tort as a cause of action. *See Bardes v. Mass. Mut. Life Ins. Co.*, 932 F. Supp. 2d 636, 639 (M.D.N.C. 2013). The claim must therefore be dismissed. *See United Magazine Co. v. Murdoch Magazines Dist., Inc.*, 146 F. Supp. 2d 385, 413 (S.D.N.Y. 2001) (prima facie tort claim dismissed where state law did not recognize claim).

*Third,* even if New York law applied, Plaintiff's allegations do not state a claim for this highly disfavored cause of action because: (i) any claim that is covered by a traditional tort, including defamation, cannot be the basis for a prima facie tort claim, *see Goldman v. Barrett*,

No. 15-civ-9223 (PGG), 2016 WL 5942529, at *7 (S.D.N.Y. Aug. 24, 2016) (collecting cases);

(ii) Plaintiff's allegations that Buchanan made the October 2018 statements to "to protect and

further … political interests," and "to persuade STIRLING to switch sides … and stop helping

[Plaintiff] and turn against him," FAC ¶¶ 1, 16, refute his conclusory allegation of "pure

malevolence," *id.* ¶ 130, a necessary element of a prima facie tort claim, *see Harisch v.

Goldberg*, No. 14-cv-9503 (KBF), 2016 WL 1181711, at *13 (S.D.N.Y. Mar. 25, 2016) ("[I]f the

defendant acts from mixed motives, a claim for prima facie tort is not made out." (citation

omitted)); *see also Lebetkin v. Giray*, No. 18-cv-8170 (DLC), 2018 WL 6591252, at *5

(S.D.N.Y. Dec. 14, 2018); and (iii) although Plaintiff mouths the words "special damages," FAC

at p. 49, he does not plead special damages with the required particularity, *see Freihofer v.

Hearst Corp.*, 65 N.Y.2d 135, 143 (1985); *Stanton v. Carrara*, 28 A.D.3d 642, 642 (2d Dep't

2006); *Med. Care of W. N.Y. v. Allstate Ins. Co.*, 175 A.D.3d 878, 880 (4th Dep't 2019).

Plaintiff's prima facie tort claim should therefore be dismissed against both Buchanan

and Longview.[3]

## III.   PLAINTIFF FAILS TO STATE A DEFAMATION CLAIM (COUNT III)

Under either New York or North Carolina law, the defamation claims against the Moving

Defendants fail.[4]  To make out a defamation claim under either state's law, a plaintiff must allege

(i) a false statement (ii) published to a third person (iii) concerning the plaintiff (iv) without

---

[3]   The prima facie tort claim also fails against Longview because there are no factual allegations to support the assertion that, to the extent Buchanan took any actions with respect to Plaintiff, he did so on Longview's behalf.  To the contrary, Plaintiff repeatedly alleges Buchanan acted "on behalf of" and took orders directly from a foreign sovereign entity.  FAC ¶¶ 1, 16, 17, 27, 129.  The conclusory allegation that Buchanan is "[Longview's] agent," *id.* ¶ 128, cannot support the claim against Longview.  Longview is a stranger to this action, with no alleged reason to cause harm to Plaintiff, and it is not alleged to have taken any actions on its own with respect to any aspect of this case.  The prima facie tort claim cannot stand as to Longview because Longview is simply not involved in any of the alleged facts.

[4]   North Carolina has the most significant interest in this case because Plaintiff is domiciled and was allegedly injured there.  *See, e.g.*, *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999).  For completeness, the Moving Defendants address defamation under the law of both States, which in any event is substantially similar.

privilege or authorization (v) that injured the plaintiff. *Taube v. Hooper*, 840 S.E.2d 313, 317

(N.C. Ct. App. 2020). A plaintiff must also allege, "at a minimum, a negligence standard, and it

must either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 261

A.D.2d 34, 38 (1st Dep't 1999); *Donovan v. Fiumara*, 442 S.E.2d 572, 574-75 (N.C. Ct. App.

1994). To allege defamation *per se*, a plaintiff must show that the statement at issue is

"susceptible of but one meaning and of such nature that the court can presume as a matter of

law" that it is defamatory. *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405, 409 (N.C.

1984) (emphasis omitted). Because Plaintiff is a former public official or figure, he must also

allege the Moving Defendants' actual malice, which he does not do. *See Egiazaryan v.*

*Zalmayev*, No. 11-civ-2670 (PKC), 2011 WL 6097136, at *4 (S.D.N.Y. Dec. 7, 2011) (holding

that foreign public servant is a "public figure" required to allege actual malice). Plaintiff's

defamation claims fail.

### A.  The Claim Fails As To The Alleged Statements At The October 2018 Meeting

In actions arising from spoken defamation, the statute of limitations is one year from the

time of speaking, without regard to the date of discovery. *See* N.C. GEN. STAT. ANN. § 1-54

(one-year statute of limitations for defamation claims); N.Y. C.P.L.R. § 215(3) (same); *Karam v.*

*First Am. Bank of N.Y.*, 190 A.D.2d 1017, 1018 (4th Dep't 1993) ("In an action for slander, the

Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous

matter."); *Samson v. North Carolina*, No. 5:19-cv-443 (BO), 2020 WL 6935469, at *4 (E.D.N.C.

Nov. 24, 2020) ("North Carolina has a one-year statute of limitation for defamation claims, and

the cause of action begins to accrue at the date of publication of the defamatory words."). To the

extent that Plaintiff's defamation claim relies on statements purportedly made by Buchanan to

Stirling at a meeting in or about October 2018, the claim is time-barred because the one-year

limitations period expired in October 2019, and the complaint in this case was not filed until March 27, 2020.

**B.**     **The Claim Fails As To The April 8, 2019 Article**

**1.**     **Plaintiff has not pled that the alleged defamatory statements were made by or attributed to Moving Defendants**

The Moving Defendants cannot be held liable for statements that they did not make and are not "attributed to" them. *Izydore v. Tokuta*, 775 S.E.2d 341, 349 (N.C. Ct. App. 2015) (noting "defamation requires that the plaintiff plead with some degree of particularity the words *attributed to the defendant*" (emphasis added)); *accord Kahn v. New York Times Co.*, 269 A.D.2d 74, 80 (1st Dep't 2000). Plaintiff cannot identify any statement made by the Moving Defendants in the article published by Intelligence Online. Nor does he plead any facts establishing that a Moving Defendant was involved in the preparation or publication of the article.[5] Plaintiff's conclusory assertion that Defendants "conveyed and published the false facts about [him] between themselves and to Intelligence Online," FAC ¶ 24, is insufficient to allege a defamation claim. *Iqbal*, 556 U.S. at 678; *see also Cruz v. Marchetto*, No. 11-civ-8378, 2012 WL 4513484, at *3-5 (S.D.N.Y. Oct. 1, 2012) (dismissing defamation counterclaim that failed to "reference or assert any factual statements made by" defamation defendant and provided "no evidence" that the defamation defendant "offered any of the alleged statements to the media").

**2.**     **Plaintiff has not sufficiently alleged falsity**

The article's two purportedly defamatory statements are: "[RAKIA] is on a vast worldwide hunt to recover arrears reportedly embezzled by its former senior officials, Khater Massaad and Oussama El Omari," FAC ¶ 19(a) (emphases omitted), and "[t]he investment

---

[5]     Although Plaintiff does not—and cannot—connect any Moving Defendant to the article, he fails to mention Longview at all, and in no way bolsters a conclusory assertion of "employment interrelationships." FAC ¶¶ 17, 24.

authority believes that Massaad and his former alley [sic] Oussama El Omari, who previously

oversaw [RAKFTZA], misappropriated as much as $1.5 billion in overpayments," *id.* Ex. 1 at 1.

The statements that Plaintiff "reportedly embezzled" and is believed to have "misappropriated"

are not alleged to be false statements of RAKIA's positions and actions.  Even if these

statements could be attributed to Defendants, Plaintiff fails to sufficiently allege they are false.

Plaintiff contends that he neither embezzled nor misappropriated, but Plaintiff misreads

the statements.  The Intelligence Online article states that Plaintiff "reportedly embezzled," and

that RAKIA "believes" Plaintiff misappropriated.  These statements of opinion are not the

factual assertions that must ground a defamation claim.  *See Mann v. Abel*, 10 N.Y.3d 271, 276

(2008); *Daniels v. Metro Mag. Holding Co.*, *L.L.C.*, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006).

Moreover, Plaintiff does not and cannot dispute that those statements are true:  The

Complaint itself references Plaintiff's conviction in RAK.  *See* FAC ¶ 39.  A declaration filed in

Plaintiff's lawsuit against RAKFTZA detailed RAK's belief that Plaintiff was guilty of "a

pattern of criminal acts conducted" while he was in office, including "embezzlement."  *See*

Declaration of Moulham Al Chawa, *El Omari v. RAKFTZA*, No. 16-3895 (S.D.N.Y. Oct. 28,

2016) (attached as Ex. A), ¶¶ 15-20.  Plaintiff published a Washington Post Op-Ed three months

before the Intelligence Online story in which he conceded that he was convicted of

embezzlement *in absentia* in a RAK Court in 2016.  *See* Oussama El Omari, Opinion: Interpol's

'red notices' are being abused. One ruined my life., *Washington Post* (Dec. 19, 2018),

http://wapo.st/2NyR2fN (last visited Mar. 2, 2021) (attached as Ex. B).  And one month before

publication of the Intelligence Online article, Plaintiff sued Interpol, complaining that Interpol

had refused to delete a "Red Notice" calling for his arrest on charges of "Embezzlement and

Abuse of Position."  *See* Complaint, *El Omari v. The Int'l Criminal Police Org.*, No. 19-01457

(E.D.N.Y. Mar. 13, 2019) (attached as Ex. C), ¶¶ 51, 54.[6]  RAKIA plainly believes that Plaintiff

misappropriated or embezzled state funds, and the statements published by Intelligence Online

are therefore true.  *See Dillon*, 261 A.D.2d at 38; *cf. Taube*, 840 S.E.2d at 319 ("[t]ruth is an

absolute defense to an allegation of defamation," and dismissal is proper where "plaintiff's own

pleadings establish the truth" of defamatory statements); *Heins v. Bd. of Trs. of Inc. Vill. of

Greenport*, 237 A.D.2d 570, 571 (N.Y. App. Div. 1997) (same).[7]  Moreover, RAK is seeking to

have Plaintiff brought to justice, thus the article's statements are non-actionable "fair reporting

on the acts of [a] foreign government[]."  *See CBS Broad. Inc. v. Counterr Grp.*, No. 05-civ-

7946 (DAB), 2008 WL 11350274, at *14 (S.D.N.Y. Aug. 26, 2008).  *See also LaComb v.

Jacksonville Daily News Co.*, 543 S.E. 2d 219 (N.C. Ct. App. 2001) (recognizing fair reporting

privilege under North Carolina law).

    The article's statements that Plaintiff worked for RAKIA and that he knew or worked

with Massaad are not actionable as defamation *per se* because they are not defamatory on their

face and do not allow the Court to presume damages.  *See Nucor Corp. v. Prudential Equity

Grp., LLC*, 659 S.E.2d 483, 486 (N.C. Ct. App. 2008) (defamation *per se* requires that words be

susceptible of one meaning and of such a nature that the court can presume as a matter of law

that they tend to disgrace and degrade the party); *Aronson v. Wiersma*, 65 N.Y.2d 592, 594-95

(1985) ("statements cannot be slanderous per se if reference to extrinsic facts is necessary to give

them a defamatory import").  As noted above (*see* Part II), Plaintiff does not plead special

damages at all, aside from his conclusory and insufficient reference to such damages in his

prayer for relief.  *See Skinner v. Reynolds*, 764 S.E.2d 652, 658 (N.C. Ct. App. 2014).

---

[6]    The Court may take judicial notice of the newspaper article and these publicly filed pleadings.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008).

[7]    At the very least, each of the statements is substantially true, and thus non-actionable.  *See Masson v. New York Magazine, Inc.*, 501 U.S. 496, 516 (1991).

### 3. Plaintiff has not alleged actual malice

Plaintiff acknowledges that he was the CEO of RAKFTZA, an agency or instrumentality of RAK.  FAC ¶¶ 4, 29, 38.  The Intelligence Online article "identif[ies] the plaintiff as a public official and … directly concern[s] the plaintiff's performance of official duties."  *Lopez v. Univision Commc'ns, Inc.*, 45 F. Supp. 2d 348, 361 (S.D.N.Y. 1999) (declining to designate Colombian Senator and New Jersey physician as a public official because the alleged defamatory broadcasts targeted his medical practice but not his official duties).  Plaintiff is a public official.

Plaintiff is also a public figure independent of his prior public office.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344-45 (1974); *see also Cabello-Rondón v. Dow Jones & Co.*, No. 16-civ-3346 (KBF), 2017 WL 3531551, at *7-8 (S.D.N.Y. Aug. 16, 2017) (designating Venezuelan government official as a public figure and noting the alleged defamatory statement identified his status), *aff'd*, 720 F. App'x 87 (2d Cir. 2018); *Egiazaryan*, 2011 WL 6097136, at *4-5 (relying upon foreign government official's "access to the channels of effective communication" to hold he was a public figure).  As evidenced by this lawsuit, Plaintiff has made sustained attempts to keep himself and his criminal record in the public eye by making public pronouncements on the fairness of his convictions by RAK.  These efforts include his own Op-Ed published in the Washington Post, a major news outlet.  *See* Ex. B, El Omari, Opinion, *supra*.  They also include his lawsuits against RAKFTZA and Interpol, which refer to those convictions.[8]  These make him—at the very least—a "limited-purpose public figure" under *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).[9]

---

[8]    *See* Second Amended Complaint, *Omari v. Ras Al Khaimah Free Trade Zone Authority et al.*, No. 16-3895 (S.D.N.Y. Sept. 15, 2016), ¶ 60 (attached as Ex. D) (alleging that Plaintiff was briefly detained by U.S. Customs after his conviction); *id.* ¶¶ 2, 19 (referencing RAK's prosecution of Plaintiff); Ex. C, Interpol Complaint ¶ 51, *supra* (referring to Plaintiff's conviction for "Embezzlement and Abuse of Position").

[9]    *Lerman* holds that plaintiffs qualify as limited-purpose public figures—requiring that they plead actual malice—by (i) successfully inviting public attention in an attempt to influence others; (ii) voluntarily injecting

With respect to public officials and public figures, the First Amendment requires a showing by clear and convincing evidence of actual malice—meaning the defendant knew the statement was false or made it with reckless disregard for its falsity. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-81 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967). Plaintiff fails to allege actual malice on the part of any Moving Defendant that Plaintiff's public stature requires. Plaintiff offers no allegations that Moving Defendants made any statements at all, much less that they made statements with knowledge of, or reckless disregard for, their falsity. His conclusory allegations of "malice" and of "reckless disregard" of truth, FAC ¶ 135, are insufficient. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279-80 (S.D.N.Y. 2013).

## IV.     PLAINTIFF FAILS TO STATE A CFAA CLAIM (COUNT IV)

The CFAA was enacted to fulfill the "narrow Congressional intent" of "prohibiting people from 'hacking' into someone else's computer system." *United States v. Aleynikov*, 737 F. Supp. 2d 173, 192 (S.D.N.Y. 2010) (citation omitted). To state a CFAA claim, Plaintiff must plead that a defendant "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused [a] 'loss' in excess of $5,000." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015) (quoting 18 U.S.C. § 1030). Moreover, "CFAA claims are subject to the particularity requirements of Rule 9(b)." *Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-civ-00790 (SBA), 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012). Plaintiff's allegations establish none of these required elements.

### A.     Plaintiff Has Not Pled That Alison "Accessed" His Computer

18 U.S.C. § 1030(a)(4) applies only where a person "knowingly and with intent to defraud, *accesses* a protected computer without authorization, or *exceeds authorized access*, and

---

themselves into a public controversy; (iii) assuming a prominent position in the controversy; and (iv) maintaining regular and continuing access to the media, all activities that Plaintiff has engaged in extensively.

by means of such conduct furthers the intended fraud and obtains anything of value" (emphases added).  But Plaintiff does not allege that Alison ever accessed his computer.  Instead, the only alleged connection between Alison and Plaintiff's computer is that Alison purportedly sent emails to Plaintiff to arrange Skype interviews, and Plaintiff chose to open those emails on his computer.  FAC ¶¶ 139-142.  (Plaintiff also alleges he gave Alison a "copy of a confidential attorney letter" but does not allege that she obtained it from his computer without authorization.) FAC ¶¶ 139-140, 143, 147-148.  There is no allegation that Alison's emails were anything other than perfectly ordinary emails, *i.e.*, there is no allegation that they contained malware of any sort.

Plaintiff's view that sending a person an email that the person opens on her or his computer constitutes unlawfully "access[ing] a protected computer" under the CFAA has been rejected by multiple courts.  *See, e.g.*, *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 642 (S.D.N.Y. 2001) (distinguishing a "passive sender of emails" from someone who has "access[ed]" the recipients' computers); *Delacruz v. State Bar of Cal.*, No. 16-cv-06858 (BLF), 2018 WL 3077750, at *6 (N.D. Cal. Mar. 12, 2018) ("[S]ending an email does not constitute accessing a computer."), *aff'd*, 768 F. App'x 632 (9th Cir. 2019); *Pulte Homes, Inc. v. Laborer's Int'l Union of N. Am.*, No. 09-13638, 2010 WL 1923814, at *4 (E.D. Mich. May 12, 2010) ("Plaintiff offers no authority supporting its contention that one accesses another's computer under the CFAA merely by leaving a voice-mail or sending an e-mail."), *aff'd in part, rev'd in part on other grounds,* 648 F.3d 295 (6th Cir. 2011).  This analysis applies equally to Skype, which is merely a way of transmitting video and audio communications by computer or smartphone.  *See United States v. DiTomasso*, 932 F.3d 58, 62 (2d Cir. 2019).

Nor can Plaintiff remedy this failing by alleging that the purported "access" to his computer by email and Skype was "without true authorization."  FAC ¶ 149.  Plaintiff's apparent

belief that Alison obtained information from him under false pretenses is irrelevant to his claim

under the CFAA, which deals only with harm flowing from the act of unlawfully accessing a

computer.  *See Aleynikov*, 737 F. Supp. 2d at 192; Orin S. Kerr, Cybercrimes' Scope:

Interpreting "Access" and "Authorization" in Computer Misuse Statutes, 78 N.Y.U. L. Rev.

1596, 1617 (2003) (observing that Congress intended the CFAA to do "for computers what

trespass and burglary laws did for real property").

###    B.    Plaintiff Has Not Pled Financial Loss Of $5,000

Plaintiff must also allege that Alison's purportedly unauthorized access of his

computer—which, again, did not occur—resulted in "loss to 1 or more persons . . . aggregating

at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).[10]  "Loss" is defined in the CFAA as

"any reasonable cost to any victim . . . and any revenue lost, cost incurred, or other consequential

damages incurred because of interruption of service."  *Id.* § 1030(e)(11).  The CFAA further

specifies that "[d]amages for a violation involving only conduct described in subsection

(c)(4)(A)(i)(I) are limited to economic damages."  *Id.* § 1030(g).

The CFAA thus requires Plaintiff to plead that he has suffered an economic loss of

$5,000 or more.  He does not.  Although the Amended Complaint alleges that the unidentified

information Plaintiff gave Alison *could* be valuable to the Moving Defendants, *see* FAC ¶ 148, it

does not allege that Plaintiff has incurred any cost or otherwise realized any economic loss from

his decision to speak with Alison.

###    C.    Plaintiff Has Not Pled That Alison Acted On Behalf Of Any Defendant

Plaintiff's CFAA claim is also fatally defective because it does not properly allege that

Alison was acting on behalf of any Moving Defendant.  Although Plaintiff conclusorily asserts

---

[10]    Plaintiff does not allege that any of the other prerequisites in 18 U.S.C. § 1030(c)(4)(A)(i)(II)-(V) apply here.

that Alison was "conspir[ing]" with the Defendants and was acting as their "agent," *id.* ¶ 151, the Amended Complaint is devoid of any allegations supporting the assertion.  Conspiracy claims must be pled "with particularity; bald speculation or a conclusory statement that individuals are coconspirators is insufficient to establish a claim for conspiracy."  *LightSquared Inc. v. Deere & Co.*, No. 13-civ-5543 (RMB), 2015 WL 585655, at *18 n.22 (S.D.N.Y. Feb 5, 2015) (citation omitted), *aff'd sub nom*. *Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015); *see also Sabilia v. Richmond*, No. 11-civ-739 (MHD), 2011 WL 7091353, at *11 (S.D.N.Y. Oct. 26, 2011).  That Plaintiff offers nothing to support his conspiracy theory is yet another basis for dismissal of this claim.

## CONCLUSION

For all of the foregoing reasons, Moving Defendants respectfully request that the Court dismiss, with prejudice, the Amended Complaint in its entirety.

DATED: March 2, 2021

**DECHERT LLP**

By: */s/ Benjamin Rosenberg*
Linda C. Goldstein
Benjamin Rosenberg
Brian C. Raphel
1095 Avenue of the Americas
New York, New York 10036
Tel. (212) 698-3500
linda.goldstein@dechert.com
benjamin.rosenberg@dechert.com
brian.raphel@dechert.com

*Attorneys for Defendants Dechert LLP and Neil Gerrard*

**GREENBERG TRAURIG LLP**

By: */s/ David G. Barger*
David G. Barger
1750 Tysons Blvd, Ste. 1000
McLean, Virginia 22102
Tel. (703) 749-1300
bargerd@gtlaw.com

Daniel P. Filor
200 Park Avenue
New York, New York 10166
Tel. (212) 801-6758
filord@gtlaw.com

*Attorneys for Defendants Andrew D. Frank, Amir Ali Handjani, and KARV Communications, Inc.*

**MURPHY & MCGONIGLE PC**

By: */s/ Steven D. Feldman*
Steven D. Feldman
1185 Avenue of the Americas, Fl. 21
New York, New York 10036
Tel. (212) 880-3988
sfeldman@mmlawus.com

*Attorney for Defendant James E.D. Buchanan*

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ Patrick J. O'Toole, Jr.*
Patrick J. O'Toole, Jr.
100 Federal Street
34th Street
Boston, Massachusetts 02110
Tel. (617) 772-8365
patrick.otoole@weil.com

Jay R. Minga
767 Fifth Avenue
New York, New York 10153
Tel. (212) 310-8378
jay.minga@weil.com

*Attorneys for Defendant Longview Partners (Guernsey) Ltd.*